**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RAYON PAYNE,
       Plaintiff,

V.

LISA T. MUNYON, ET AL
       Defendants

Case No.: 6:25-cv-00615

JURY TRIAL REQUESTED

---

AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES
*(Civil Rights Action – 42 U.S.C. § 1983, § 1985, and Supremacy Clause Claims)*

This federal civil rights action is brought under 42 U.S.C. § 1983 and related provisions, arising from systemic constitutional violations committed through coordinated judicial and institutional misconduct across Florida and California state courts. The action alleges due process violations, abuse of process, obstruction of justice, and denial of access to courts. Central to this complaint is the invocation of the Supremacy Clause of the United States Constitution, where state courts — including the Florida Supreme Court — failed to uphold binding federal constitutional rights, triggering the need for declaratory and injunctive relief.

---

Respectfully submitted,

/s/ Rayon Payne

_____

RAYON PAYNE, PRO SE
8815 Conroy Windermere Rd
Ste. #208
Orlando Florida 32835
Tel: 863-485-0550
Email: kekomardi@gmail.com

1

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** — 3

**SUMMARY OF CLAIMS** — 4

**PRESERVATION OF FEDERAL REVIEW AND TIMING OF FILING** — 5

**JURISDICTION AND VENUE** — 6

**PARTIES** — 7

**STATEMENT OF FACTS** — 18

**CAUSE OF ACTION** — 40

Claim One: Violation of 42 U.S.C. § 1983 – Deprivation of Due Process Rights (Fourteenth Amendment) — 40

Claim Two: Violation of 42 U.S.C. § 1983 – Denial of Access to the Courts (First and Fourteenth Amendments) — 42

Claim Three: Violation of 42 U.S.C. § 1983 – Retaliation for Protected Speech (First Amendment) — 44

Claim Four: Violation of 42 U.S.C. § 1983 – Denial of Equal Protection of the Law (Fourteenth Amendment) — 45

Claim Five: Violation of 42 U.S.C. § 1983 – Retaliatory Conduct by State Actors (First and Fourteenth Amendments) — 47

Claim Six: Abuse of Process Under Color of State Law (42 U.S.C. § 1983 – Substantive Due Process) — 49

Claim Seven: Civil Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985(2) and § 1985(3)) — 50

Claim Eight: Fraud Upon the Court – Coordinated Judicial Misconduct and Concealment — 52

Claim Nine: Use of State Power for Private Advantage — 54

Claim Ten: Violation of the Supremacy Clause and Due Process by Florida Supreme Court Justices — 55

Claim Eleven: Constructive Trust — 57

**PRAYER FOR RELIEF** — 59

**REQUEST FOR JURY TRIAL** — 61

**PRELIMINARY STATEMENT**

1. This case began as a challenge to judicial misconduct at the state trial level. But it has since evolved into a broader constitutional crisis implicating the highest levels of Florida's judicial system. After exhausting every available remedy — including a formal petition to the Florida Supreme Court under its All-Writs Jurisdiction — Plaintiff was met not with a fair review, but with a denial that reframed his request, ignored the constitutional claims raised, and relied on irrelevant and outdated case law.

2. The Florida Supreme Court's April 15, 2025 order not only sidestepped its duty to address the violations but did so in a way that conflicts with the United States Constitution. Under the Supremacy Clause (Article VI, Clause 2), every judge in every state is bound to uphold federal constitutional rights. The Court's refusal to do so — while acting under color of state law — constitutes a failure of that obligation.

3. This amended complaint reflects the gravity of what has transpired: not just the misconduct of individual actors, but the institutional failure of the Florida judiciary to honor the Constitution. Plaintiff now brings this case before the United States District Court because federal intervention is required when a state judicial system insulates itself from accountability and refuses to enforce federally protected rights.

## SUMMARY OF CLAIMS

4. Plaintiff brings this civil rights action under 42 U.S.C. §§ 1983 and 1985 for violations of his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. What began as a denial of due process and equal protection in state trial court proceedings has now escalated through the appellate process and culminated in a constitutional breach by the Florida Supreme Court itself.

5. The complaint details a pattern of coordinated conduct by state court judges, private attorneys, law firms, and government actors — all operating under color of state law — that deprived Plaintiff of a fair forum, impartial adjudication, and access to meaningful review. These violations include judicial bias, failure to apply binding legal standards, abuse of discretion, improper ex parte communications, and retaliation for exercising constitutional rights.

6. Plaintiff formally invoked the Florida Supreme Court's All-Writs Jurisdiction to address these systemic violations. In response, the Court issued an order on April 15, 2025, that ignored the claims presented, reframed the relief requested, and failed to provide any substantive constitutional review — despite its obligation to do so under the Supremacy Clause (Article VI, Clause 2) of the United States Constitution.

7. Having exhausted all available state remedies, Plaintiff now turns to this Court for declaratory and injunctive relief, and for damages against those actors who participated in the denial of his constitutional rights.

**PRESERVATION OF FEDERAL REVIEW AND TIMING OF FILING**

8. Plaintiff sought relief from the Florida Supreme Court under its constitutional All-Writs Jurisdiction to address systemic judicial misconduct and violations of federal constitutional rights. On March 14, 2025, the Florida Supreme Court issued a non-dispositional directive, granting Plaintiff until March 30, 2025, to file an amended petition. Plaintiff complied, filing the amended petition on March 19, 2025, supported by seven appendices that documented ongoing due process and equal protection violations throughout the Florida judicial system. The Court accepted the petition and placed it on its docket.

9. While the petition remained pending, two attorneys entered notices of appearance. At the same time, state trial and appellate courts continued issuing rulings that amplified the constitutional concerns raised in Plaintiff's filing. On April 1, 2025, Plaintiff submitted two motions to the Florida Supreme Court: a Motion to Stay Proceedings Below, requesting that lower court proceedings be paused pending the outcome of the writ, and a Motion to Strike, informing the Court that these filings were made expressly to preserve federal review of the constitutional issues at hand.

10. Receiving no response from the Florida Supreme Court, Plaintiff filed his original federal complaint in the United States District Court for the Middle District of Florida on April 9, 2025, asserting claims under 42 U.S.C. §§ 1983 and 1985. The Florida Supreme Court subsequently issued a written order on April 15, 2025, reframing Plaintiff's petition as a writ of prohibition and denying it without addressing the constitutional violations presented. The Court's order cited

unrelated and outdated precedent, ignoring both the substance of the petition and its own prior directive.

11. This sequence — from the filing of the amended writ petition to the Court's reframing and denial — constitutes a refusal to honor federal constitutional rights, in violation of the Supremacy Clause (Article VI, Clause 2) of the United States Constitution. Plaintiff preserved every stage of the record, notified the Florida Supreme Court of his intent to seek federal review, and exhausted all available state remedies prior to initiating this action.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including claims brought pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violations of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments. Jurisdiction is further proper under 28 U.S.C. § 1343(a)(3), which grants original jurisdiction to federal district courts over civil actions seeking to redress the deprivation of rights secured by the Constitution or by any Act of Congress providing for equal rights, when such deprivation occurs under color of state law. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Florida, including actions taken by judicial officers, attorneys, and court personnel. Plaintiff has fully exhausted available remedies at the state level, including direct filings with the Florida Supreme Court under its constitutional All-Writs Jurisdiction. The Court issued a final ruling on April 15, 2025, reframing Plaintiff's petition and declining

6

to address the federal constitutional issues raised — an action that constitutes a violation of the Supremacy Clause (U.S. Const. art. VI, Cl. 2). This refusal of review further confirms the need for federal intervention.

## PARTIES
### Plaintiff

13. **RAYON PAYNE,** an individual residing in Florida, is a journalist and commentator on the Folks Alert podcast. He brings this action pursuant to 42 U.S.C. §§ 1983 and 1985, asserting violations of his constitutional rights arising from judicial and legal misconduct within the Florida court system.

### Defendants: (Trial Court)

14. **LISA T. MUNYON**, in her individual capacity, was the presiding judge in Plaintiff's 2019 defamation case and currently serves as Chief Judge of the Ninth Judicial Circuit of Florida.

15. **REGINALD WHITEHEAD**, in his individual capacity, succeeded Judge Munyon and entered final judgment in the 2019 case. Significantly reduced damages, ignored binding legal standards, and dismissed relief supported by the record.

16. **ERIC NETCHER**, in his individual capacity, handled post-judgment proceedings in the same case. Suppressed discovery, dismissed judicial inquiries, and upheld earlier constitutional violations.

17. **LUIS CALDERON**, in his individual capacity, presided over the 2024 case (Payne v. Diaz et al.). Denied motions for disqualification, adopted defense orders verbatim, and delayed rulings that denied Plaintiff's access to due process.

18. **MICHAEL DEEN**, in his individual capacity, handled both the Navy Federal matter (2024-CA-010589) and Payne v. Star (2024-CA-007880). Ignored defaults, granted untimely motions, and allowed a conflicted attorney to draft court orders and manipulate the record.

19. **PATRICIA STROWBRIDGE**, in her individual capacity, presided over Payne v. Amaral et al. (2024-CA-009448). Dismissed Plaintiff's complaint by labeling it a shotgun pleading, ignoring binding admissions and mooting the summary judgment motion.

**Defendants: (Appeal Court)**

20. **DAN TRAVER**, in his individual capacity, is the Chief Judge of the Sixth District Court of Appeal and is sued for actions taken in connection with appellate rulings affecting Plaintiff.

21. **JOHN K. STARGEL**, in his individual capacity, sat on panels denying extraordinary writs where Plaintiff sought protection from judicial misconduct in the trial court.

22. **KEITH WHITE**, in his individual capacity, participated in nearly every case involving Plaintiff from 2023 through 2025. Denied writs, motions to disqualify, and motions to transfer across unrelated matters, reflecting a pattern of obstructing constitutional review.

23. **MARY ALICE NARDELLA**, in her individual capacity, affirmed trial court judgment in 2023 and denied later extraordinary writs. Contributed to the denial of relief from ongoing constitutional violations.

8

24. **JOSHUA A. MIZE**, in his individual capacity, affirmed lower court judgment without opinion despite record of serious procedural violations.

25. **PAETRA T. BROWNLEE**, in her individual capacity, ruled against Plaintiff in all appellate efforts seeking relief from lower court misconduct.

26. **ROGER GANNAM**, in his individual capacity, denied Plaintiff's writs in critical cases involving summary judgment and improper dismissals.

27. **JARED E. SMITH**, in his individual capacity, denied key motions to strike and disqualify conflicted attorneys. Enabled continued harm through procedural suppression.

28. **BRIAN D. LAMBERT,** in his individual capacity, sat on multiple panels in 2025. Denied Plaintiff's efforts to address disqualification, conflicts, and procedural violations in the trial court.

29. **CARRIE ANN WOZNIAK**, in her individual capacity, on or about April 10, 2025, she participated in a panel decision in Payne v. Star et al. that denied a motion to disqualify attorneys. Her involvement in the appellate rulings and oversight of proceedings related to prior misconduct directly contributed to the ongoing denial of Plaintiff's constitutional rights.

### Defendants: (Trial Judge Placer County, CA)

30. **JANE YORK PUNNEO**, in her individual capacity, presided over a Domestic Violence Restraining Order (DVRO) proceeding in the Superior Court of California, County of Placer (Case No. S-DR-0039799). On or around March 13, 2025, Judge Punneo granted and extended a final CLETS DVRO against Plaintiff through April 2025, despite clear acknowledgment that Plaintiff had not been

served and was not present for the hearing. The DVRO was not temporary in nature and relied on allegations previously reversed in appellate proceedings. This action violated Plaintiff's due process rights and reinforced the systemic judicial pattern of suppressing Plaintiff's access to justice through procedural abuse and retaliation.

## Defendants: (Clerk of Court)

31. **TIFFANY MOORE RUSSELL**, in her official capacity only, serves as Clerk of Court and is named solely for the purposes of declaratory and injunctive relief related to the administration of court records and filings.

## Defendants: (Attorneys)

32. **ERIC PARKE LaRUE II**, in his individual capacity, is an attorney who initiated litigation against Plaintiff and is alleged to have engaged in unlawful filings and abuse of process.

33. **DONALD DEMPSEY**, in his individual capacity, appeared as co-counsel in both actions. Filed motions to quash, dismiss, and delay enforcement of binding rulings. Enabled improper filings and coordinated strategy that suppressed Plaintiff's rights.

34. **KRISTA N. CAMMACK**, in her individual capacity, entered appearance for RLW Realty and individual defendants. Participated in motions that blocked enforcement of procedural defaults and binding admissions, furthering the denial of due process.

35. **BENJAMIN KOESTER**, in his individual capacity, entered appearance for RLW Realty and individual defendants. Participated in motions that blocked enforcement of procedural defaults and binding admissions, furthering the denial of due process.

36. **STUART GLENN**, in his individual capacity, represented Melissa Sue Amaral. Played a key role in post-default litigation that resulted in dismissal of Plaintiff's complaint. Contributed to procedural manipulation that undermined Plaintiff's constitutional claims.

37. **KIMBERLY LOPEZ**, in her individual capacity, entered appearance after Clerk's default was recorded. Participated in motions that reversed Plaintiff's procedural wins and contributed to denial of due process.

38. **ASHA WEDEMIER-ALLAN**, in her individual capacity, entered appearance after Clerk's default was recorded. Participated in motions that reversed Plaintiff's procedural wins and contributed to denial of due process.

39. **JOHN RINE**, in his individual capacity, filed appearances on behalf of their firm and themselves. Represented Shannon Ramos and Lewis Brisbois while also defending their own actions, creating direct conflicts of interest. Used filings to obstruct sanctions and avoid scrutiny.

40. **SHANNON ELIZABETH MURPHY**, in her individual capacity, filed appearances on behalf of their firm and themselves. Represented Shannon Ramos, Mason Law and Lewis Brisbois while also defending their own actions, creating direct conflicts of interest. Used filings to obstruct sanctions and avoid scrutiny.

41. **MARY J. WALTER**, in her individual capacity, filed a notice of appearance as appellate counsel for Melissa Sue Amaral before the Sixth District Court of Appeal. Continued representation that enabled the suppression of Plaintiff's due process rights and upheld trial court dismissal based on procedural mischaracterizations.

42. **MICHAEL R. D'LUGO**, in his individual capacity, filed a notice of appearance for RLW Realty, Logan Wilson, and Elizabeth Jean in the Florida Supreme Court. His entry into the case sustained the defense posture that began at the trial court level and contributed to the continued procedural harm.

43. **KRISTEN M. FIORE**, in her individual capacity, filed a notice of appearance for Navy Federal Credit Union in Florida Supreme Court proceedings. Her appearance furthered the defense's obstruction of enforcement rights and shielded prior procedural violations from correction.

44. **CAITLIN R. POLCARO**, in her individual capacity, substituted in for Shannon Murphy as appellate counsel for Lewis Brisbois Bisgaard & Smith LLP and affiliated defendants. Her appearance perpetuated the defense of conflicted parties and contributed to ongoing constitutional violations in appellate review.

45. **PAUL IRVIN**, in his individual capacity, interfered in the enforcement of a valid judgment by transmitting unauthorized communications to AT&T in response to subpoenas issued by the Plaintiff. Despite never filing a notice of appearance, he sent legal correspondence aimed at obstructing subpoena compliance.

46. **ANDREW IRVIN**, in his individual capacity, interfered in the enforcement of a valid judgment by transmitting unauthorized communications to AT&T in

response to subpoenas issued by the Plaintiff. Despite never filing a notice of appearance, he sent legal correspondence aimed at obstructing subpoena compliance.

47. **JOHN FULLER**, in his individual capacity, appeared at a hearing on January 15, 2025, on behalf of a defendant without filing a notice of appearance. Participated in motions to dismiss that resulted in procedural harm to Plaintiff and contributed to due process violations.

48. **PETER MAGNANI**, in his individual capacity, appeared at a hearing on January 15, 2025, on behalf of a defendant without filing a notice of appearance. Contributed to the defense's procedural strategy that resulted in the dismissal of Plaintiff's case and denial of access to court.

49. **SHANNON RAMOS**, also known as Shannon Mason, in her individual capacity is a licensed attorney in the State of California who represented Juliya Star in related legal proceedings. She engaged in litigation strategy that, when viewed in connection with co-defendants, contributed to the wrongful deprivation of Plaintiff's constitutional rights.

## Defendants: (Private Entity)

50. **NAVY FEDERAL CREDIT UNION**, is named as a corporate defendant based on its involvement in one of the underlying civil actions, including alleged misconduct and false filings.

51. **RLW REALTY, LLC**, in its organizational capacity, central defendant in a landlord-tenant dispute turned constitutional matter. Benefited from dismissal

based on false procedural grounds. Used legal representation to avoid binding admissions and suppress judgment on the merits.

52. **THE LARUE FIRM PLLC**, in its organizational capacity, filed the 2019 defamation lawsuit and remained actively involved through 2024. Functioned as a proxy vehicle for abusive litigation and suppression of protected speech.

53. **DONALD DEMPSEY, P.A.**, in its organizational capacity, actively represented defendants in retaliation litigation. Filed motions to obstruct and reverse Plaintiff's lawful judgments. Operated in tandem with LaRue Law.

54. **LEWIS BRISBOIS BISGAARD & SMITH LLP**, in its organizational capacity, firm acted as both counsel and defendant. Used its attorneys to file motions defending their own conduct. Enabled procedural suppression of Plaintiff's claims while benefiting from favorable rulings.

55. **IRVIN & IRVIN, PLLC**, in its organizational capacity, interfered with judicial proceedings by transmitting unauthorized legal correspondence to AT&T in an attempt to block compliance with lawfully issued subpoenas. Despite not appearing as counsel of record, the firm engaged in off-the-record communications that obstructed enforcement of a valid judgment. These actions contributed to denial of access to court and due process.

56. **WALTER APPEALS & GENERAL LITIGATION**, in its organizational capacity, entered an appearance on appeal in defense of RLW Realty and other parties implicated in constitutional and procedural violations at the trial level. The firm reinforced underlying constitutional harms and aided in the obstruction of fair appellate review.

57. **MASON LAW OFFICE**, in its organizational capacity, now defunct, is the former law firm of Shannon Ramos. This entity facilitated and participated in legal representation and filings connected to the misconduct alleged herein.

58. **AKERMAN LLP**, in its organizational capacity, is a law firm that represented Navy Federal Credit Union and its attorneys, including Defendants Kimberly A. Lopez and Asha Wedemier-Allan. Through its actions and coordinated representation, Akerman LLP participated in conduct contributing to the abuse of process and violation of Plaintiff's rights.

59. **WICKER SMITH  O'HARA MCCOY & FORD, P.A**. in its organizational capacity, is a Florida law firm whose attorneys participated in litigation or communication connected to the underlying scheme of misconduct and due process violations set forth in this Complaint.

**Defendants: (Private Parties)**

60. J**ERMAINE CARLOS DIAZ a.k.a. YOUNG LACE**, in his individual capacity, is the subject of Plaintiff's protected speech and a party to multiple lawsuits described herein.

61. **JULIYA STAR**, in her individual capacity, served and defaulted in Florida proceedings. A final judgment was entered against her. Afterward, she filed a pro se motion to quash service, falsely asserting improper notice. The trial court reversed itself and vacated the judgment despite confirming valid service. Star's Florida case mirrored a reversed California DVRO proceeding, and her conduct formed part of a larger pattern of litigation used to silence Plaintiff's speech.

15

62. **MELISSA SUE AMARAL**, in her individual capacity, named in a landlord-tenant dispute that evolved into a due process case. Though she did not appear personally, Amaral benefited from procedural manipulation by counsel and judicial rulings that dismissed the case by labeling the complaint a shotgun pleading, despite binding admissions and a valid summary judgment motion.

63. **LOGAN WILSON**, in his individual capacity, a named defendant who, through coordinated legal filings, benefited from the court's failure to rule on the merits of Plaintiff's claims. Was not present for hearings but was shielded by procedural rulings that denied Plaintiff access to justice.

64. **ELIZABETH JEAN**, in her individual capacity, also a named defendant in the Amaral case. Her attorneys helped secure dismissal without the court addressing the binding facts already in the record. Jean's legal position was protected by judicial rulings that bypassed Plaintiff's right to a fair hearing.

65. **DAVID HUTCHINSON**, in his individual capacity, directly interfered with court proceedings by placing a phone call to the Superior Court of California, County of Placer, on February 14, 2025, which led to the court's rejection of a Domestic Violence Restraining Order (DVRO) filing against him and co-defendant Juliya Star. Despite not being a named party, Hutchinson inserted himself into active litigation for the purpose of suppressing Plaintiff's legal rights and obstructing judicial process. His conduct constitutes abuse of process and contributed to ongoing constitutional harm.

66. **LAUREN BURROWS**, in her individual capacity, served as Judicial Assistant to Judge Luis Calderon. On or around November 2024, Burrows sent separate

communications to select parties while excluding others—despite Plaintiff being the moving party. There are at least three documented instances of this selective communication, and the court refused to correct it. Her actions obstructed transparency and contributed to the systemic denial of due process. As a non-judicial actor, she is not protected by judicial immunity.

67. **CAROLINA ARGUELLO**, in her individual capacity, is a case manager at Irvin & Irvin, PLLC, who transmitted communications, including a fax to AT&T, that were part of the unauthorized disclosure or manipulation of Plaintiff's personal information and contributed to the broader constitutional violations alleged.

68. **CHERRY JORDAN**, in her individual capacity, is a legal assistant at The LaRue Firm, PLLC, who transmitted unauthorized communications to AT&T that furthered the underlying pattern of abuse, contributing to the deprivation of Plaintiff's due process and privacy rights.

69. **DANA LUCAS**, in her individual capacity, is a legal assistant at The LaRue Firm, PLLC, who communicated directly with the court and opposing parties in ways that supported unlawful conduct and undermined Plaintiff's right to a fair proceeding.

70. **ADDISON B. HICKS**, in his individual capacity,is a law clerk at The LaRue Firm, PLLC, whose participation in the preparation or filing of documents contributed to the deprivation of Plaintiff's rights as detailed herein.

### Florida Supreme Court Justices (Official Capacity Only)

71. Defendants **Charles T. Canady, Jorge Labarga, John D. Couriel, Jamie R. Grosshans**, and **Renatha Francis** are Justices of the Florida Supreme Court.

17

They are named in their official capacity only, based on their participation in the Court's April 15, 2025, ruling that denied Plaintiff's constitutional petition. This denial was issued without notice, and after the Court reframed the petition into a request Plaintiff did not make, in direct violation of the Supremacy Clause of the United States Constitution and Due Process protections. Justice Grosshans has documented ties to the Ninth Judicial Circuit, which was the subject of the petition. No recusal or disclosure was made. Plaintiff seeks no monetary damages against these Justices and pursues only declaratory and injunctive relief pursuant to *Ex parte Young* and federal law.

72. Notably, **Chief Justice Carlos G. Muñiz** and **Justice Meredith L. Sass**o did not sign the April 15, 2025, order, and no reason for their absence was publicly recorded. Their nonparticipation raises further questions about internal disagreement, conflict of interest, or avoidance of participation in the Court's handling of serious constitutional claims.

## STATEMENT OF FACTS

### Case One: Diaz v. Payne (2019-CA-008025-O)
### Trial Court Proceedings (Judge Munyon and Judge Whitehead)

73. In 2019, Jermaine Carlos Diaz filed a defamation lawsuit against Plaintiff in Orange County Circuit Court. The lawsuit, filed by attorney Eric Parke LaRue II, was based on Plaintiff's public reporting concerning Diaz's criminal history and conduct. This reporting appeared on Plaintiff's podcast, FolksAlert, and was constitutionally protected speech under the First Amendment.

74. Judge Lisa Munyon initially presided over the case. Despite Plaintiff raising anti-SLAPP defenses and clear constitutional grounds for dismissal, Judge

18

Munyon denied the motion to dismiss and allowed the case to proceed. This ruling laid the foundation for procedural and constitutional violations that would follow.[1]

75. Judge Reginald Whitehead later took over the case. In 2022, he entered a final judgment in Plaintiff's favor, but reduced the amount from over $622,000 to $51,728.30 — without legal justification or evidentiary findings supporting the reduction. The judgment failed to account for binding admissions made by Diaz during the litigation and did not address constitutional arguments presented by Plaintiff.

**Direct Appeal (Sixth District Court of Appeal)**

76. Following entry of the final judgment, Plaintiff appealed to the Sixth District Court of Appeal under Case No. 6D23-1554. The appeal raised substantial constitutional questions, including violations of Florida's anti-SLAPP statute, denial of due process, and the trial court's refusal to enforce procedural admissions.

77. The appellate panel — Judges Mary Alice Nardella, Joshua A. Mize, and Paetra T. Brownlee — issued a per curiam affirmance without opinion on October 3, 2023. The ruling failed to engage with the record or the constitutional claims

---

[1] See Exhibits A through F. Following the denial of the motion to dismiss, Plaintiff moved for final judgment (Exhibit C), citing a record that included a granted motion for summary judgment and entry of default. Despite this, the trial court significantly reduced the requested damages, stating the record did not support the full amount (Exhibits D and E). The court acknowledged the awarded figure was "substantially less than what was requested." On appeal, the Sixth District Court of Appeal affirmed without opinion (Exhibit F), leaving constitutional objections and factual inconsistencies unresolved.

19

raised, and no written explanation was provided. The affirmance allowed a constitutionally defective judgment to stand.

78. At the time, the appellate court was not yet aware of proxy filings submitted by LaRue after his withdrawal. That issue would not surface until 2024, during enforcement proceedings in the trial court. However, the affirmance nonetheless shielded significant procedural violations and effectively foreclosed further review of the judgment's legitimacy.

### Post-Appeal Enforcement (Judge Netcher and Judicial Inquiry)

79. After the appellate court affirmed the judgment, enforcement proceedings resumed in the trial court before Judge Eric Netcher. During this phase, Plaintiff discovered that attorney Eric LaRue, despite formally withdrawing in 2020, had continued to file motions in the case on Diaz's behalf using unauthorized means. One such filing, dated June 22, 2020, was submitted as a pro se motion but was in fact drafted by LaRue. Metadata confirmed his authorship.

80. Plaintiff submitted a judicial inquiry in 2024, supported by technical evidence, documenting LaRue's unauthorized proxy activity. Judge Netcher dismissed the inquiry without hearing, refused to open discovery, and declined to enforce procedural admissions. These actions enabled enforcement of a judgment tainted by concealed misconduct.

### Case Two: Payne v. LaRue et al. (Case No. 2024-CA-007719)
### Presiding Judge: Luis F. Calderon - Timeline: October 2024 – January 2025

81. In 2024, Plaintiff brought a civil action against Eric Parke LaRue II, Donald Dempsey II, Jermaine Carlos Diaz, and their law firms, asserting malicious

prosecution, abuse of process, intentional infliction of emotional distress, Anti-SLAPP violations, and civil conspiracy. The case was directly tied to prior litigation weaponized to suppress Plaintiff's constitutionally protected speech and post-judgment rights.

82. Assigned to Judge Luis Calderon, the case quickly took a procedurally irregular path. On December 2, 2024, Plaintiff's Motion for Summary Judgment—supported by binding admissions resulting from unanswered discovery—was set for hearing. Instead of ruling on that motion, Judge Calderon prioritized motions to dismiss filed by the defendant-attorneys. He then permitted Defendant Eric LaRue to draft a proposed order directing the procedural course of the case—over Plaintiff's written and oral objections.

83. Addison B. Hicks, a J.D. law clerk at The LaRue Firm, PLLC, actively assisted attorney Eric LaRue during the proceedings in *Pain v. LaRue*, Case No. 24-CA-7719. Hicks contributed to the drafting and submission of proposed court orders and sent email communications to judicial staff that supported LaRue's legal positioning. Plaintiff alleges that Hicks's actions were not independent or neutral, but were part of a coordinated effort within the firm to assist LaRue in securing favorable rulings through procedural manipulation and administrative pressure.

84. Cherry Jordan, a legal assistant at The LaRue Firm, transmitted unauthorized communications to AT&T in connection with subpoenas issued by Plaintiff. Her actions, though outside official filings, furthered LaRue's ability to interfere with enforcement and contributed to the ongoing deprivation of Plaintiff's rights.

85. In addition, Carolina Arguello, a case manager with Irvin & Irvin PLLC, transmitted a fax to AT&T that improperly interfered with Plaintiff's lawful subpoena enforcement. Acting outside the formal bounds of litigation, her conduct — on behalf of defense interests — further impeded Plaintiff's access to critical records and supported the obstruction of constitutional rights through unauthorized third-party influence.

86. Dana Lucas, a legal assistant at The LaRue Firm, PLLC, played an instrumental role in coordinating hearing schedules and managing direct communications between attorney Eric LaRue and the court in *Payne v. LaRue*, Case No. 24-CA-7719. Lucas's logistical support and facilitation of court access further enabled LaRue to control procedural timelines and outcomes. Plaintiff alleges that Lucas's coordination materially advanced LaRue's litigation strategy and formed part of the broader scheme to obstruct Plaintiff's access to a fair and impartial forum.

87. Despite those objections, the court reconvened on January 13, 2025, where Plaintiff restated his objections on the record, pointing out the court's misrepresentation of facts, refusal to address the summary judgment, and inappropriate reliance on LaRue's proposed order. Nonetheless, Judge Calderon dismissed the complaint with prejudice, without engaging with Plaintiff's pending motions or the binding admissions on file.

88. The final dismissal order, entered January 31, 2025, reflected further gamesmanship. The court inconsistently ruled that some claims were dismissed "with prejudice" and others "without prejudice," and then invited Plaintiff to amend

22

his complaint, despite the fact that this was already the amended complaint. This move manufactured procedural ambiguity while closing off Plaintiff's actual legal right to amend, effectively distorting the record and suppressing appellate access. The order also falsely stated there had been "no objection" to the proposed order, directly contradicting the transcript.

89. These included documentation of three separate instances of selective communication from Judge Calderon's chambers, where defense counsel were directly contacted while Plaintiff was excluded. These communications further illustrated the procedural imbalance and favoritism granted to defendants.

90. When these issues were presented to Chief Judge Lisa Munyon, she declined to reassign the matter or address Plaintiff's concerns, even as the evidence of bias and irregularity deepened.

**Plaintiff sought appellate relief by filing three extraordinary writs with the Sixth District Court of Appeal:**

- Writ of Prohibition (Case No. 6D2025-0049) – denied as moot by Judges Dan Traver, John Stargel, and Keith White;

- Writ of Certiorari (Case No. 6D2025-0037) – denied for "failure to show irreparable harm" by the same panel;

- Second Writ of Prohibition (Case No. 6D2025-0062) – denied without opinion by Judges Mary Alice Nardella, Keith White, and Paetra T. Brownlee.

91. These denials failed to address the core constitutional and judicial misconduct issues, despite the writs being specifically based on violations of due process and judicial disqualification standards. Moreover, the Sixth DCA lacked

23

jurisdiction to rule on those constitutional and ethical matters. Under Florida law, jurisdiction over constitutional violations and judicial misconduct lies solely with the Florida Supreme Court. The Sixth DCA's action in denying those writs exceeded its legal authority, and in doing so, shielded the lower court's misconduct rather than correcting it.[2]

92. This pattern—where the trial court facilitated procedural suppression, and the appellate court overreached to protect it—reflected a coordinated institutional failure. Plaintiff's constitutional rights were denied not only by an individual judge, but by judicial actors working in tandem to prevent exposure, evade accountability, and block fair appellate review.

**Case Three: Payne v. Navy Federal Credit Union (Case No. 2024-CA-010589)**
**Presiding Judge: Michael Deen, Clerk Involved: Tiffany Moore Russell**
**Defendant Entity: Navy Federal Credit Union**

93. This case stemmed from enforcement efforts tied to the two thousand nineteen judgment entered in Payne v. Diaz. Plaintiff initiated garnishment proceedings against Navy Federal Credit Union upon discovering the institution maintained accounts associated with Jermaine Carlos Diaz — the judgment debtor and a convicted sex trafficker.

---

[2] See *Exhibit F*, Order Dismissing Second Amended Complaint in *Payne v. LaRue et al.* (Case No. 2024-CA-007719), which falsely characterizes Plaintiff's Second Amended Complaint as an original filing and dismisses several counts with prejudice without addressing the live arguments made at hearing. See also *Exhibit G*, Transcript of Hearing dated May 22, 2024, where Plaintiff raised constitutional violations and procedural irregularities that were omitted or misrepresented in the court's final ruling. Together, these materials reflect a deliberate attempt to suppress judicial review by mischaracterizing the procedural posture of the case and issuing a final judgment designed to evade appellate scrutiny.

94. Navy Federal's legal position shifted multiple times. Initially, it denied the existence of any Diaz-linked accounts. When Plaintiff amended the complaint to include additional identifying details, NFCU repeated its denial. However, further filings confirmed that Navy Federal maintained at least one joint minor account tied to Diaz. These representations were made while Navy Federal was actively suing Diaz in Texas, indicating a deliberate attempt to conceal its financial relationship and obstruct Plaintiff's right to enforce judgment.

95. After failing to respond to the complaint within the required timeframe, Navy Federal was in default. Plaintiff filed a summary judgment motion supported by binding admissions, following the Defendant's failure to engage in discovery. Under Florida Rule of Civil Procedure one point five zero zero (a), the Clerk of Court — Tiffany Moore Russell — was obligated to enter default ministerially. Instead, her office forwarded the motion to Judge Deen, bypassing the rule entirely and enabling judicial discretion where none was permitted.

96. At a subsequent hearing, Judge Michael Deen ignored the Clerk's failure to enter default, rejected Plaintiff's summary judgment motion, and granted an untimely motion to quash filed by Navy Federal. On the record, Judge Deen stated, "I'm not the Clerk," deflecting from the court's administrative role in enforcing defaults and preserving judicial neutrality.

97. Defense counsel Kimberly Lopez and Asha Wedemier-Allan of Akerman LLP entered their appearance only after the Clerk's default was on file. Their filings were procedurally irregular and served to reverse a default that had already been triggered under the rules. Rather than acknowledge the procedural posture or

address the failure to respond to discovery, counsel aligned with the court's shifting rationale and advanced a defense that relied entirely on undoing lawful process.

98. This conduct — by both the attorneys and the court — reflects not just a due process violation, but a coordinated effort to deny Plaintiff meaningful access to remedies. Navy Federal was allowed to obscure financial information, avoid judgment, and reverse a binding procedural position through collaboration with the court and clerk.

99. This case illustrates how judicial discretion was selectively exercised, not to enforce rules, but to shield an institution acting in bad faith. The Clerk's failure to act as required, the court's dismissal of lawful defaults, and defense counsel's exploitation of that opening together reflect systemic obstruction of justice.

100. Akerman LLP, through attorneys Kimberly A. Lopez and Asha Wedemier-Allan, represented Navy Federal Credit Union in proceedings involving Plaintiff. Their legal representation extended beyond routine defense work and into active support of prior unconstitutional rulings issued by Florida courts. Plaintiff alleges that Akerman's filings and arguments were made under color of law, and that their role enabled the enforcement of decisions that had been obtained through judicial misconduct and due process violations.

101. The firm's participation gave institutional weight to outcomes tainted by irregular procedure and bias, further legitimizing unconstitutional actions taken at the trial court level. Akerman's legal posture echoed and reinforced the same

legal barriers previously erected against Plaintiff by state actors and judicial officers, forming part of the larger pattern of obstruction now before this Court.

### Case Four: Payne v. Star, et al (Case Number: 2024-CA-7880) Presiding Judge: Michael Deen

102.   Attorney Shannon Ramos, of Mason Law, represented Juliya Starr during the initial Domestic Violence Restraining Order (DVRO) proceedings. Ramos was a central figure in presenting and litigating the DVRO based on false allegations that lacked legal foundation. The filings, arguments, and evidentiary omissions presented by Ramos contributed directly to the entry of a restraining order that was later overturned on appeal.

103.   Plaintiff alleges that Ramos and Mason Law knowingly advanced a false narrative for the purpose of gaining strategic legal advantage in related family proceedings, constituting abuse of process and malicious prosecution. Their actions, taken under the appearance of lawful advocacy, played a critical role in launching the chain of judicial misconduct that followed.

104.   The case sought relief from prior litigation abuse, including a reversed California DVRO. Named defendants included Juliya Star, Shannon Ramos, Shannon Murphy, John Rine, and their law firm, Lewis Brisbois Bisgaard & Smith LLP.

105.   The first issue centered on a fundamental conflict: Shannon Murphy and John Rine, both individually named defendants, entered the case as attorneys for themselves and their firm. Despite Plaintiff's objections — including a formal written objection to their standing, and oral objections raised at the hearing — the court allowed these parties to represent themselves and their employer while

27

actively participating in the litigation. The court then adopted a proposed dismissal order drafted by Murphy and Rine, a serious breach of neutrality.

106.    That order, however, was factually inaccurate. It stated that the court had found Plaintiff's complaint failed to state a cause of action. But the official court minutes show something else: the court ruled that jurisdiction under Florida's long-arm statute was not established for Defendant Shannon Ramos. The dismissal order misrepresented the basis of the [3]court's ruling, and it was authored by the very attorneys who benefitted from the misstatement.

107.    Plaintiff sought to preserve the record for appeal and requested a transcript of the January 13th, 2025 hearing. However, the court reporter — contracted through and connected to the defense law firm — demanded a $1,500 deposit, effectively denying access. With the oral record blocked and the written order inaccurate, Plaintiff filed a motion for clarification, attaching both proposed orders and an email from the judicial assistant confirming that both drafts had been received and would be presented to the court.

108.    Despite being presented with direct evidence of the conflict between the oral ruling, the written order, and the court minutes, the court denied the motion for clarification. This refusal to address an acknowledged discrepancy preserved a false record and prevented appellate review. Rather than correct the conflict, the

---

[3] **Footnote 4**: See **Exhibit H**, Plaintiff's *Motion for Clarification and Correction of the Record*, filed March 18, 2025, detailing inconsistencies between the oral ruling and the written order, including objections to proposed orders submitted by conflicted counsel. See also **Exhibit I**, the *Order Denying Motion for Clarification*, entered March 20, 2025, in which the trial court refused to correct the record or acknowledge its deviation from the official court minutes. These actions contributed to the procedural manipulation and constitutional harm at the heart of this lawsuit.

28

court allowed a mischaracterized order — written by defendants acting as counsel — to stand.

109. The second part of the case involved Juliya Star, who had been properly served but failed to respond. Plaintiff obtained a clerk's default and moved for final judgment, which was granted. After judgment was entered, Star filed a motion to quash service and a motion to vacate, alleging improper notice. Without holding an evidentiary hearing or requiring proof, the court vacated the default and reversed the judgment — erasing Plaintiff's lawful procedural win.

110. Together, these events show a deliberate pattern: (1) conflicted attorneys controlling litigation and the record; (2) court orders based on false grounds; (3) blocked access to transcripts and refusal to clarify contradictions; and (4) improper vacatur of a default judgment. This combination left Plaintiff without a fair hearing, an accurate record, or access to appellate review — while protecting the interests of defendants deeply embedded in the court process.

### Case Five: Payne v. Amaral et al. (Case Number: 2024-CA-009448)
### Trial Court: Ninth Judicial Circuit (Judge Patricia Strowbridge)
### Appeal: Sixth District Court of Appeal – Writ of Certiorari (2025)

111. This case arose from a landlord-tenant dispute involving Plaintiff and defendants Melissa Amaral, RLW Realty, Logan Wilson, and Elizabeth Jean. Plaintiff served timely discovery requests. The defendants failed to respond, triggering binding admissions under Florida Rule of Civil Procedure 1.370(a). Plaintiff then moved for summary judgment based on those admissions.

112. Wicker Smith O'Hara McCoy & Ford, P.A., through its attorneys including Melissa Emerald, Logan Wilson, and Elizabeth Jean, played a central role in

29

defending and perpetuating unconstitutional rulings rendered in Florida state court. Rather than operating as neutral legal representatives, these attorneys used their positions to obstruct Plaintiff's access to meaningful judicial review and to reinforce procedural outcomes that lacked due process.

113.    Wicker Smith attorneys supported and legitimized findings that had been tainted by judicial misconduct, filing pleadings that ignored binding legal admissions and relied on procedural tactics rather than substantive legal review. Their legal strategy aligned with a broader pattern of institutional defense — one that sought not to correct constitutional harm, but to shield it.

114.    Plaintiff alleges that the firm's actions were carried out under color of law, and that its attorneys materially contributed to the systemic violations at the heart of this case.

115.    Defendants were represented by Stuart Glenn (for Amaral) and Benjamin Koester and Christina Cammack (for RLW Realty, Wilson, and Jean). These attorneys never filed responses to the discovery, nor did they seek protective relief. Instead, they filed motions to dismiss — which do not stay discovery obligations — and went on to argue for dismissal over binding facts they had already failed to challenge.

At the hearing on January 7, 2025, Judge Patricia Strowbridge:

- Refused to consider the binding admissions, saying, "I'm not dealing with the admissions."

- Belittled the Plaintiff with condescending remarks like, "I do this all day in judge court — or judge college," and told him, "you don't need discovery under oath," and to "seek legal advice."

- Granted Defendants' motions to dismiss, labeling the complaint a "shotgun pleading" — a finding not supported by the structure or content of the actual pleading.

116. The court's order gave Plaintiff thirty days to amend, but he declined, maintaining the admissions already satisfied the pleading standard and proved the facts.

117. Before the dismissal became final, Plaintiff filed a Writ of Certiorari to the Sixth District Court of Appeal, arguing that:

The trial court ignored procedural rules regarding admissions;

- The court allowed defense counsel to proceed despite having defaulted on discovery;

- And the entire proceeding denied due process by focusing on form over substance.

118. The writ was reviewed by a panel including Judge Roger Gannam, Judge Keith White, and Judge Jared E. Smith, who denied relief, citing only "failure to show irreparable harm." The panel never addressed the binding admissions, the misconduct of defense counsel, or the constitutional questions.

119. By allowing defense attorneys to sidestep discovery, argue for dismissal over unchallenged facts, and participate in proceedings while in procedural default, the court enabled a coordinated denial of justice. The appellate court's failure to

intervene furthered that harm and supported the pattern of systemic misconduct running across all five cases.[4]

### Pattern of Denials by the Sixth District Court of Appeal

120. What began as a single appeal in twenty twenty-three evolved into a troubling and consistent pattern of denial by the Sixth District Court of Appeal. Across more than a dozen filings—including direct appeals, extraordinary writs, motions to disqualify, motions to transfer, and motions for judicial notice—the results were always the same: denial, dismissal, or silence.

121. The first indication came when Plaintiff appealed the final judgment in the twenty nineteen case—6D23-1554—raising constitutional concerns about procedural irregularities and violations of Florida's anti-SLAPP statute. That appeal was denied without written opinion by a panel consisting of Judges Mary Alice Nardella, Joshua Mize, and Paetra Brownlee, who affirmed the trial court's judgment despite the serious constitutional issues raised. The judgment had reduced Plaintiff's claims from over six hundred thousand dollars down to fifty thousand dollars, with the court asserting—incorrectly—that the record did not support higher damages, even though summary judgment and default had already been entered.

122. What followed was more alarming. Beginning in early twenty twenty-five, Plaintiff filed four extraordinary writs in separate appellate matters: two writs of

---

[4] See Exhibit J, Transcript of Proceedings dated January 7, 2025, in *Payne v. Amaral, et al.* (Case No. 2024-CA-009448), where Judge Patricia L. Strowbridge openly stated she would not address binding admissions and suggested Plaintiff "seek legal counsel." The court misrepresented procedural standards concerning discovery and pleadings, allowed opposing counsel to mislead the court, and ultimately dismissed Plaintiff's claims in a manner that obstructed substantive review and protected known misconduct.

prohibition, one writ of certiorari, and one writ of mandamus. These writs involved challenges to judicial bias, improper dismissal practices, conflicts of interest, and refusal to disqualify judges despite clear cause. In each instance, the Sixth DCA denied the writs—some as "moot," others for "failure to show irreparable harm"—despite the facially apparent constitutional violations.

123. In case after case, Judge Keith White appeared on multiple panels: 6D2025-0049, 0037, 0062, 0103, 0215, and 0386. He consistently voted to deny protection from lower court misconduct, regardless of the context. Judge Dan Traver, now Chief Judge of the Sixth DCA, had previously served in the Ninth Judicial Circuit alongside many of the trial judges named as defendants. He sat on key panels involving writs against Judge Calderon and Navy Federal, including 6D2025-0049, 0037, and 0388. Judges Stargel, Smith, Brownlee, and Lambert also featured prominently, showing up across several unrelated matters but arriving at the same result every time.

124. In one instance, the Sixth DCA issued an "Order to Show Cause" and invited conflicted defense counsel—whose standing had been challenged—to respond to a motion, compounding the constitutional violation by formally legitimizing conflicted representation. Even when motions included exhibits, clerk defaults, and admissions that should have triggered judicial review, the court declined to intervene.

125. This pattern culminated in 2025, where, in at least two pending appeals, the Sixth DCA denied motions for disqualification, transfer, and judicial notice. Those rulings went beyond the court's jurisdiction because Florida law reserves certain

33

misconduct and constitutional review to the Florida Supreme Court. And yet, in this case, the Sixth DCA declined to transfer or certify those questions upward. It instead blocked them.

126. Each of the judges listed—Traver, White, Brownlee, Smith, Lambert, Mize, Nardella, Stargel, and Gannam—appeared on at least one or more panels involving the Plaintiff. But the most striking detail is this: no matter the judge, no matter the issue, and no matter the case—over twelve distinct proceedings—the outcome was the same.

127. These rulings not only lacked explanation—they revealed something more troubling: a pattern in panel assignment. While Plaintiff was entitled to a randomly selected appellate panel, one judge with a prior history of adverse rulings continued to appear.

128. Judge Brian D. Lambert presents a striking example of recurring judicial exposure across district lines. Plaintiff previously appeared before Lambert in three separate appellate matters in the Fifth District Court of Appeal—including in Payne v. Sandra Koch (5D19-2826), Payne v. Sandra Koch (5D22-854), and Payne v. Sandra Koch (5D21-2427), spanning from 2019 through 2022. After a gap in involvement during 2023 and 2024, Lambert reemerged in 2025 as an associate judge on multiple Sixth DCA panels—all of which involved Plaintiff and resulted in adverse rulings. This reappearance was not incidental. It reflects a pattern of deliberate judicial assignment, raising serious concerns about impartiality and the integrity of panel selection. The recurring presence of a judge with a history of adverse rulings against Plaintiff—now reinserted into new

appellate cases—supports Plaintiff's claim of coordinated exposure and systemic efforts to shield judicial misconduct from constitutional review.

129.   This cannot be explained away as coincidence. It reflects either deliberate coordination or a systemic refusal to grant Plaintiff any protection, even when the legal issues were serious, urgent, and well-documented. Whether by design or institutional neglect, the Sixth DCA functioned not as a safeguard of justice, but as a shield for lower court errors—errors that now rise to the level of federal concern.

130.   Judge Carrie Ann Wozniak, sitting on the Sixth District Court of Appeal, authored or joined a final order that upheld trial court findings despite clear constitutional violations appearing in the record. Plaintiff alleges that Judge Wozniak had full access to the appellate filings, lower court transcripts, and procedural history, and yet chose to affirm rulings that denied due process, disregarded binding legal admissions, and sustained patterns of abuse without review.

131.   Rather than correcting the breakdown of judicial process, Judge Wozniak's order further entrenched it, allowing state actors to continue obstructing Plaintiff's rights with appellate cover. Plaintiff asserts that this appellate ruling was not a neutral legal interpretation, but a willful act of judicial shielding that contributed to the systemic denial of constitutional protections and directly led to the filing of this civil rights action.

**Escalation to the Florida Supreme Court**

132.    In a final attempt to halt the spread of constitutional violations and judicial improbriety, the Plaintiff sought relief from the Florida Supreme Court. On March 14, [5]2025, the Court issued a non-dispositive directive, striking the original petition but inviting an amended filing with a clearer presentation of facts and constitutional grounds. The Plaintiff complied and submitted the amended petition, which the Court subsequently accepted.

133.    Since that filing, two new developments have occurred. First, attorneys with clear conflicts—either due to representing parties previously involved in lower court violations or having been implicated themselves—filed appearances on the Florida Supreme Court's docket. Their participation compounded the very harm that is now before the Court. Second, while the petition was pending, the trial court and the Sixth District Court of Appeal continued issuing rulings directly related to the matters in dispute, exacerbating the constitutional injuries and obstructing meaningful review.

134.    In response, the Plaintiff filed two motions: one to stay all proceedings below, notifying the Florida Supreme Court of the ongoing rulings that threaten to render the petition moot; and another to strike the unauthorized appearances of

---

[5] See Exhibit K, March 14, 2025 Order from the Florida Supreme Court directing Petitioner to amend and resubmit his petition, which was subsequently granted — reflecting the Court's active engagement. See also Exhibits L and M, Plaintiff's Motion to Stay proceedings below and Motion to Strike unauthorized appearances. While the Florida Supreme Court has not yet ruled on the petition, the trial court and Sixth District Court of Appeal have continued to issue rulings in live matters, compounding the constitutional harm. The unauthorized participation of attorneys not summoned by the Court further illustrates the breakdown of procedural safeguards. These filings show that Plaintiff has exhausted his state-level remedies and preserved all constitutional objections at the highest level available.

conflicted attorneys, underscoring that their involvement converts the Supreme Court docket itself into an active constitutional violation.

135.    The question now becomes whether the Florida Supreme Court will continue to allow its own docket to carry the weight of a statewide constitutional breach—or whether it will act decisively to remedy a harm that has now risen to its doorstep.

136.    Nonetheless, regardless of whether the Florida Supreme Court ultimately takes corrective action, the Plaintiff has fully exhausted all available state remedies. At each stage—trial, appellate, and now the highest court in the state—the Plaintiff has followed proper procedure, raised constitutional objections, and sought intervention. But as the record shows, the constitutional violations have only escalated. The Florida Supreme Court's engagement, while meaningful, does not pause the ongoing harm. Plaintiff cannot sit idle while the violations persist. Accordingly, this action is brought before this Court because it is now the only forum with the power to grant relief and uphold the constitutional protections that have been systematically denied.

137.    Following the escalation of constitutional violations through the trial and appellate courts, Plaintiff filed a petition with the Florida Supreme Court invoking the Court's All-Writs Jurisdiction under Article V, Section 3(b)(7) of the Florida Constitution. The petition provided extensive documentation of judicial misconduct and presented federal constitutional claims under the First, Fifth, and Fourteenth Amendments. The Court acknowledged receipt and issued a directive

37

on March 14, 2025, inviting Plaintiff to return with supplemental materials — which Plaintiff timely filed.

138.    Rather than review the claims or the record, the Court reframed the petition as a narrow writ of prohibition — a procedural mechanism Plaintiff had not invoked — and then denied it, citing case law that had no connection to the claims raised. The Court ignored the constitutional arguments entirely and avoided any discussion of its All-Writs authority or obligations under the Supremacy Clause of the United States Constitution.

139.    The final denial order was signed by five Justices. Chief Justice Carlos Muñiz and Justice Meredith L. Sasso did not sign. No explanation, recusal, or dissent was provided. Two of the signing Justices, including Justice Jamie R. Grosshans, had previously served in the same lower courts implicated in Plaintiff's filings.[6]

140.    Plaintiff alleges that this ruling was not a mere procedural error but a deliberate act of institutional protection, taken under color of state law and with full knowledge of the federal issues at stake. The denial not only refused relief — it served as a signal to lower courts and affiliated legal actors that the misconduct detailed in the petition would be shielded, not corrected. As such, this ruling directly contributed to Plaintiff's continued deprivation of constitutional rights and forms the basis for Plaintiff's claim for declaratory and injunctive relief against the Justices in their official capacity.

141.    This refusal to exercise jurisdiction and the Court's reliance on outdated precedent, rather than addressing Plaintiff's federal constitutional claims,

---

[6] Exhibit R – April 15, 2025 Florida Supreme Court Order Official denial of Plaintiff's amended all-writs petition. Plaintiff alleges this constitutes a due process violation and breaches the Supremacy Clause.

represents a breach of the Florida Supreme Court's duty under the Supremacy Clause of the U.S. Constitution. As reaffirmed in *Cooper v. Aaron*, 358 U.S. 1 (1958), and *Testa v. Katt*, 330 U.S. 386 (1947), state courts are bound to enforce federal rights and cannot disregard them based on state-level interpretations or procedural maneuvering.

### Cross-Jurisdictional Judicial Abuse: California to Florida

142.   In March 2025, Judge Jane York Punneo of the Placer County Superior Court extended a CLETS Domestic Violence Restraining Order (DVRO) through April 2025, despite clear notice in the record that Plaintiff had not been served and was not present for the hearing. The judge's order was not labeled temporary—it was a full DVRO, issued without an evidentiary hearing, in violation of Plaintiff's due process rights under the Fourteenth Amendment.[7]

143.   The allegations used to justify the order were materially identical to claims that had already been reversed in a California appellate ruling in a prior case involving the same petitioner, Julia Star. Rather than dismiss those claims or pause for proper notice, Judge Punneo proceeded in Plaintiff's absence—enabling Star to reassert already-resolved issues and obtain court-ordered restraints outside the law.

144.   This event cannot be viewed in isolation. Julia Star had previously engaged in similar conduct in Florida, where she appeared in proceedings before Judge Michael Dean and benefited from comparable constitutional violations. In both

---

[7] See **Exhibit O**, *Order Extending DVRO*, entered March 13, 2025, by Judge Jane York-Punneo. The court extended a CLETS restraining order without Plaintiff's presence or service, violating due process. A timely appeal was filed to preserve review.

states, she successfully used the courts to reassert claims that had been adjudicated or reversed, while judges failed to enforce the most basic constitutional safeguards. That a single party could leverage judicial authority in two jurisdictions—each time bypassing due process—reinforces the broader pattern outlined in this complaint: a legal system increasingly willing to ignore constitutional rights when it serves institutional or procedural convenience.

145. Although the underlying California case had already been reversed on appeal in earlier proceedings, Plaintiff has also filed a timely notice of appeal challenging this most recent DVRO extension—preserving both the record and the constitutional claims at issue.

## CAUSE OF ACTION

### Claim One: Violation of 42 U.S.C. § 1983 –
### Deprivation of Due Process Rights (Fourteenth Amendment)
### Against All Defendants

146. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

147. At all relevant times, Defendants were acting under color of state law in their capacity as judges, clerks, attorneys, private actors operating in concert with state officials, or court staff participating in the administration of proceedings involving the Plaintiff.

148. Plaintiff had clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution to fair and impartial procedures before being deprived of liberty or property.

40

149.  Defendants willfully, recklessly, or negligently deprived Plaintiff of due process through:

   a.  Secret communications and improper coordination among judicial officers and attorneys;

   b.  The entry and enforcement of orders without lawful hearings or proper notice;

   c.  The disregard of binding admissions and legal standards, including court rules and established precedent;

   d.  The refusal to recuse in matters involving conflicts of interest;

   e.  The approval and acceptance of proposed orders submitted by non-neutral parties without input or objection from Plaintiff;

   f.  The manipulation of docket entries and filings, including omissions or suppression of key filings.

150.  These acts and omissions were not isolated events but formed a consistent pattern of judicial misconduct, administrative manipulation, and legal sabotage that violated Plaintiff's right to meaningful and unbiased adjudication.

151.  As a direct and proximate result of these actions, Plaintiff was deprived of protected liberty and property interests without the benefit of a fair hearing, suffered injury to reputation and standing, and was denied redress through the normal channels of review.

152.  Defendants' conduct violated 42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process Clause.

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official

capacities, and compensatory and punitive damages against Defendants sued in their

individual capacities, as appropriate and allowed by law.

**Claim Two: Violation of 42 U.S.C. § 1983 –
Denial of Access to the Courts (First and Fourteenth Amendments)
Against All Defendants**

153.    Plaintiff incorporates by reference all preceding paragraphs as though fully

set forth herein.

154.    Under the First and Fourteenth Amendments, Plaintiff has a fundamental right

to access the courts to seek redress for grievances, challenge unlawful

government conduct, and protect personal liberty and property interests.

155.    Defendants, acting under color of state law and in coordination with one

another, engaged in a pattern of conduct that deprived Plaintiff of meaningful

access to the courts by:

  a.  Deliberately obstructing filings or refusing to acknowledge them on the

  docket;

  b.  Holding hearings without notice or meaningful opportunity for Plaintiff to be

  heard;

  c.  Delaying or ignoring critical motions, including motions to disqualify, strike,

  or clarify jurisdictional issues;

  d.  Enforcing or entering orders without proper jurisdiction or due process;

  e.  Permitting attorneys with conflicts of interest to manipulate court outcomes

  or operate unchecked;

42

f.  Failing to provide adequate procedures to remedy errors, recuse biased actors, or appeal wrongful actions.

156.  These actions and omissions denied Plaintiff a fair opportunity to litigate claims, defend legal rights, and participate in court proceedings in a meaningful way — a right guaranteed under the First Amendment and protected from state infringement by the Fourteenth Amendment.

157.  Defendants' interference was intentional or carried out with reckless disregard for Plaintiff's rights and resulted in ongoing legal prejudice, including the inability to obtain fair review or judicial accountability within the state court system.

158.  As a direct and foreseeable result of Defendants' conduct, Plaintiff suffered substantial harm, including the denial of remedies, loss of judicial credibility, and continued exposure to unlawful rulings that could not be fairly challenged or overturned.

159.  This conduct constitutes a violation of 42 U.S.C. § 1983 and Plaintiff's rights under the First and Fourteenth Amendments.

### Relief Requested:

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants sued in their individual capacities, as permitted by law.

43

**Claim Three: Violation of 42 U.S.C. § 1983 –
Retaliation for Protected Speech (First Amendment)
Against All Defendants**

160.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

161.   Plaintiff engaged in **constitutionally protected speech and petitioning activity** by:

   a.   Filing motions and pleadings challenging the legality of court actions;

   b.   Reporting judicial misconduct and systemic irregularities;

   c.   Objecting to conflicts of interest and procedural violations;

   d.   Exercising the right to seek review and redress through the courts, including filings to the Florida Supreme Court and the federal judiciary.

162.   In response to this protected activity, **Defendants**, acting under color of state law, retaliated against Plaintiff through a coordinated pattern of adverse conduct, including:

   a.   Suppressing filings or delaying rulings on time-sensitive motions;

   b.   Using their judicial or legal authority to issue unfavorable or punitive orders;

   c.   Permitting biased actors to proceed unchecked despite clear conflicts;

   d.   Failing to correct or acknowledge clear legal violations once raised;

   e.   Engaging in institutional silence in the face of documented abuse, thereby reinforcing a hostile legal environment for speech.

163.   This retaliation was intended to punish Plaintiff for speaking out, discourage further advocacy, and chill Plaintiff's exercise of First Amendment rights.

164. The retaliatory conduct lacked any legitimate legal basis and was carried out in bad faith, with deliberate indifference to Plaintiff's right to freely engage in lawful court proceedings and expression.

165. As a direct and proximate result of this retaliation, Plaintiff suffered legal, emotional, and reputational harm, including restricted access to the courts and the erosion of trust in judicial process.

166. Defendants' actions constitute a violation of **42 U.S.C. § 1983** and the **First Amendment** to the United States Constitution.

### Relief Requested:

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities, as allowed by law.

### Claim Four: Violation of 42 U.S.C. § 1983 – Denial of Equal Protection of the Law (Fourteenth Amendment) Against All Defendants

167. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

168. The **Equal Protection Clause** of the **Fourteenth Amendment** guarantees that no state shall deny any person within its jurisdiction the equal protection of the laws.

169. **Defendants**, acting under color of state law, treated Plaintiff differently from similarly situated individuals by:

   a. Refusing to apply binding precedent or procedural safeguards in Plaintiff's cases while applying them in other cases;

45

b.  Denying Plaintiff access to remedies and protections routinely afforded to litigants represented by counsel;

c.  Allowing adverse parties and attorneys to violate court procedures and ethical rules without consequence, while holding Plaintiff to heightened scrutiny;

d.  Enabling judicial and legal actors with known conflicts of interest to remain involved in Plaintiff's cases without disqualification or oversight;

e.  Blocking or suppressing Plaintiff's filings or evidence in ways that were not applied to opposing parties.

170.  The differential treatment was not based on any legitimate legal justification but rather on impermissible factors, including Plaintiff's pro se status, protected speech, and persistent efforts to challenge judicial misconduct.

171.  Defendants' conduct deprived Plaintiff of the equal protection of the law and created a two-tiered system in which Plaintiff was denied basic fairness, neutrality, and recourse within the judicial process.

172.  These violations occurred systematically and repeatedly across multiple proceedings and levels of the state court system, resulting in sustained injury and institutional exclusion from equal justice.

173.  Defendants' conduct constitutes a violation of **42 U.S.C. § 1983** and the **Equal Protection Clause** of the Fourteenth Amendment.

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities, as permitted by law.

**Claim Five: Violation of 42 U.S.C. § 1983 –
Retaliatory Conduct by State Actors (First and Fourteenth Amendments)
Against All Defendants**

174.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

175.    Plaintiff exercised rights protected under the **First Amendment**, including the right to petition the government for redress, speak on matters of public concern, and engage in legal advocacy in defense of constitutional rights.

176.    Plaintiff was further entitled, under the **Fourteenth Amendment**, to the protections of due process and equal application of the law without discrimination or retaliatory interference.

177.    In response to Plaintiff's constitutionally protected actions — including filing motions, reporting judicial misconduct, seeking appellate and Supreme Court intervention, and raising procedural and ethical violations — **Defendants**, acting under color of state law, engaged in retaliatory conduct intended to punish and deter those actions.

178.    Such retaliatory conduct included:

a.  The suppression or manipulation of court records and filings;

b.  The issuance of adverse rulings disconnected from legal merit;

47

c. The coordinated tolerance of attorney misconduct while sanctioning or ignoring Plaintiff's objections;

d. Procedural gamesmanship and administrative delays that impeded Plaintiff's access to fair hearings and timely rulings;

e. Judicial silence and institutional nonresponse after clear constitutional concerns were raised at the trial, appellate, and supreme court levels.

179. Defendants' actions lacked any legitimate legal basis and were carried out in bad faith to chill Plaintiff's protected speech and obstruct lawful advocacy.

180. As a result, Plaintiff suffered material harm, including lost access to remedies, diminished court credibility, and the denial of meaningful participation in judicial proceedings.

181. This pattern of retaliatory conduct by state actors constitutes a violation of **42 U.S.C. § 1983**, and the **First and Fourteenth Amendments** of the United States Constitution.

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities, as permitted by law.

**Claim Six: Abuse of Process Under Color of State Law**
**(42 U.S.C. § 1983 – Substantive Due Process)**
**Against All Defendants**

182.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

183.  Under the Fourteenth Amendment, Plaintiff is entitled to substantive due process — protection against arbitrary, abusive, or conscience-shocking conduct by government officials acting under color of state law.

184.  Defendants, including judges, attorneys, clerks, and private actors acting in concert, engaged in a pattern of conduct that constitutes abuse of legal process, including:

a.  Repeated use of court proceedings to delay justice or retaliate against Plaintiff;

b.  Filing or endorsing false or misleading pleadings and proposed orders;

c.  Coordinating with judicial officers to obtain rulings based on improper influence or undisclosed conflicts of interest;

d.  Advancing litigation in cases where jurisdiction was lacking or where appearances were entered without proper standing;

e.  Manipulating procedural rules not for justice, but to exhaust, silence, or sideline Plaintiff.

185.  These actions were not isolated or mistaken, but part of a sustained misuse of judicial and administrative power for improper ends.

186.   This abuse of process, carried out under color of state law, deprived Plaintiff of fair access to the courts, distorted legal outcomes, and violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

187.   The conduct described above shocks the conscience and undermines the integrity of judicial proceedings — the kind of harm that § 1983 was designed to address.

188.   As a direct and foreseeable result, Plaintiff suffered significant legal and personal harm, including denial of justice, reputational damage, and continued exposure to unconstitutional proceedings.

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities, as allowed by law.

**Claim Seven: Civil Conspiracy to Interfere with Civil Rights**
**(42 U.S.C. § 1985(2) and § 1985(3))**
**Against All Defendants**

189.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

190.   42 U.S.C. § 1985(2) prohibits conspiracies to obstruct justice, including efforts to prevent, intimidate, or hinder a party's ability to access or participate in legal proceedings.

191.   42 U.S.C. § 1985(3) prohibits conspiracies to deprive individuals of equal protection or equal privileges under the law, including coordinated efforts to block or distort access to justice through state or private actors.

50

192. Defendants, acting individually and in concert, knowingly entered into an agreement — explicit or tacit — to interfere with Plaintiff's civil rights and to obstruct Plaintiff's ability to obtain justice in state and federal court proceedings.

193. This conspiracy included:

   a. Coordinated legal filings and motions designed to mislead courts and suppress Plaintiff's arguments;

   b. The use of personal or professional relationships with judges, clerks, or other court officers to gain improper advantages;

   c. Participation in or acquiescence to rulings entered without jurisdiction, notice, or due process;

   d. The collective disregard of ethical obligations and court rules to suppress Plaintiff's speech and legal standing;

   e. Shared efforts to block appellate or Supreme Court intervention by ignoring filings or refusing to act.

194. The acts in furtherance of the conspiracy were taken under color of state law or in collaboration with state actors, and were motivated by a desire to preserve power, avoid accountability, and suppress Plaintiff's protected rights.

195. As a result, Plaintiff's constitutional rights were violated, including due process, access to the courts, and equal protection, causing measurable harm.

196. Defendants' actions constitute a violation of 42 U.S.C. § 1985(2) and § 1985(3).

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities, as allowed by law.

**Claim Eight: Fraud Upon the Court –**
**Coordinated Judicial Misconduct and Concealment**
**Against All Defendants**

197. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

198. **Fraud upon the court** arises when officers of the court — including judges, attorneys, clerks, and related actors — engage in conduct that corrupts the judicial process, undermines the court's integrity, or prevents impartial administration of justice.

199. **Defendants**, acting under color of state law and/or in their official legal capacities, engaged in a pattern of deliberate deception, concealment, and coordination that defrauded the judicial process at multiple levels.

200. This conduct included:

   a. Drafting and submitting false or misleading proposed orders for judicial signature without proper notice or hearing;

   b. Entering appearances or rulings without disclosing conflicts of interest;

   c. Omitting or suppressing key documents from court records or rulings;

   d. Deliberately misapplying legal precedent or procedures to create cover for unconstitutional decisions;

   e.  Coordinating rulings across different courts or divisions to produce outcomes disconnected from fact or law;

   f.  Refusing to recuse or disqualify despite direct involvement in matters at issue.

201.   These acts were not merely legal errors, but **systematic efforts to shield misconduct**, frustrate appeals, and deprive Plaintiff of meaningful legal process — thereby constituting fraud upon the court.

202.   Defendants' misconduct corrupted judicial outcomes, deprived Plaintiff of a fair tribunal, and severely undermined public confidence in the judicial system.

203.   Such coordinated conduct, involving both state and private actors, constitutes a violation of federal law and supports Plaintiff's claims under **42 U.S.C. § 1983** and common-law principles of institutional fraud.

### Relief Requested:

Plaintiff seeks declaratory relief confirming the existence of fraud upon the court, and any equitable or injunctive remedies the Court deems necessary to protect the judicial process and Plaintiff's constitutional rights. Compensatory and punitive damages are also sought where legally permitted.

**Claim Nine: Use of State Power for Private Advantage**
**(Violation of 42 U.S.C. § 1983 – Fourteenth Amendment)**
**Against All Defendants**

204. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

205. Under the Fourteenth Amendment, Plaintiff is entitled to due process, equal protection, and the fair and impartial application of law by state actors.

206. Defendants, both public officials and private individuals acting in coordination, unlawfully used the authority and tools of the State of Florida to advance personal, professional, or political objectives rather than neutral justice.

207. Examples of such misuse include:

   a. Judicial rulings issued to benefit specific attorneys or parties with personal connections;

   b. The use of clerks, court staff, or law firm assistants to facilitate unlawful communications, filings, or proposed orders;

   c. Law firms leveraging their influence to gain favorable court treatment or avoid oversight;

   d. Selective enforcement of court procedures or ethical standards depending on party affiliation or identity;

   e. Failure of judges to recuse or disclose relevant prior involvement in related matters while continuing to preside.

208. These actions diverted the purpose of judicial authority away from impartiality and into service of private gain, constituting a clear abuse of state power under color of law.

209.   Plaintiff's constitutional rights were violated as a result, including the right to a fair tribunal, equal access to courts, and the assurance that government power would be exercised lawfully and without favoritism.

210.   Defendants' conduct forms a clear violation of 42 U.S.C. § 1983, as it involves misuse of state authority to deprive Plaintiff of fundamental protections guaranteed by the Constitution.

### Relief Requested:

Plaintiff seeks declaratory and injunctive relief against all Defendants in their official capacities, and compensatory and punitive damages against Defendants in their individual capacities as authorized by law.

### Claim Ten: Violation of the Supremacy Clause and Due Process by Florida Supreme Court Justices (42 U.S.C. § 1983 – Fourteenth Amendment and Article VI, Clause 2 of the U.S. Constitution) Against Justices of the Florida Supreme Court in their Official Capacities

211.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

212.   Article VI, Clause 2 of the United States Constitution — the Supremacy Clause — mandates that federal constitutional rights and laws take precedence over conflicting state rules or court practices. All state courts, including the Florida Supreme Court, are bound by this principle.

213.   Plaintiff submitted a petition to the Florida Supreme Court pursuant to Article V, Section 3(b)(7) of the Florida Constitution, invoking the Court's All-Writs Jurisdiction and raising multiple federal constitutional violations occurring at the trial and appellate levels.

214. On March 14, 2025, the Florida Supreme Court issued a directive inviting Plaintiff to amend and resubmit the petition, which Plaintiff timely filed with detailed factual exhibits and legal support.

215. On April 15, 2025, the Florida Supreme Court denied the petition — but did so by reframing it as a narrow "writ of prohibition" request, ignoring Plaintiff's actual invocation of All-Writs jurisdiction and the extensive constitutional record provided.

216. The Court cited outdated and unrelated case law that addressed only trial court procedure, and not the constitutional obligations raised in Plaintiff's petition. This denial was issued without notice, opportunity to respond, or explanation as to why the All-Writs basis was ignored.

217. Five Justices signed the order: Charles T. Canady, George Labarga, John D. Couriel, Renatha Francis, and Jamie R. Grosshans — the latter of whom has direct ties to the Ninth Judicial Circuit, which is implicated in the underlying misconduct. Two Justices, including Chief Justice Carlos G. Muñiz and Meredith Sasso, did not sign the order and offered no explanation or recusal.

218. This action by the Florida Supreme Court constitutes a deliberate evasion of its constitutional duty to uphold federal law and correct systemic rights violations, even when the violations arise from within the judiciary.

219. The decision undermines federal supremacy, violates Plaintiff's right to due process, and sends a broader institutional signal that constitutional misconduct by state actors will not be reviewed — thereby emboldening future abuse.

56

220.    By refusing to exercise jurisdiction, reframing the petition without notice, and issuing a denial with known conflicts and without disqualification, the Justices acted under color of state law in a manner that directly contravenes the Constitution.

**Relief Requested:**

Plaintiff seeks declaratory and injunctive relief against the named Justices in their official capacities only, including:

221.    A declaration that the Florida Supreme Court's actions violated Plaintiff's rights under the Supremacy Clause and the Fourteenth Amendment;

222.    An injunction prohibiting the Justices from reframing or denying future petitions raising federal constitutional claims under All-Writs jurisdiction without full and fair review;

223.    Any further relief deemed just and proper by this Court.

**Claim Eleven: Constructive Trust**
**(Equitable Remedy – Restitution and Tracing of Misappropriated Funds)**
**Against Private Law Firms, Attorneys, and Related**
**Defendants in Their Individual Capacities**

224.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

225.    A constructive trust is an equitable remedy imposed to prevent unjust enrichment where a party has wrongfully obtained or retained property, funds, or benefits that rightfully belong to another — particularly through fraud, abuse of power, or breach of fiduciary duty.

57

226. Plaintiff alleges that various private attorneys and law firms — including but not limited to LaRue Law Firm, Mason Law, Wicker Smith O'Hara McCoy & Ford P.A., and Akerman LLP — received payments, fees, or other financial benefits as a direct result of coordinated misconduct, court manipulation, and unconstitutional legal processes.

227. These benefits were not lawfully earned through fair judicial proceedings but obtained by:

   a. Participating in litigation where due process was denied;

   b. Submitting fraudulent orders or filings;

   c. Abusing client relationships, court procedures, or conflicts of interest;

   d. Acting under color of law or conspiring with state actors to gain a favorable result.

228. The Florida courts, at both trial and appellate levels, failed to address or correct the unlawful conduct that enabled these financial gains, and the Florida Supreme Court ultimately refused to intervene under its constitutional All-Writs authority.

229. Plaintiff therefore seeks the imposition of a constructive trust over all proceeds, legal fees, or financial transfers obtained through or tied to the alleged unlawful conduct.

230. Plaintiff also seeks an equitable accounting and tracing of any funds connected to these matters and requests that those assets be placed in trust and returned or preserved for Plaintiff's benefit pending further court order.

**Relief Requested:**

Plaintiff requests that this Court:

- Declare that a **constructive trust** is warranted over all funds or benefits improperly obtained through the conduct alleged;

- Order a full accounting of all financial transfers related to this conduct;

- Require restitution of funds and any associated profits;

- Enjoin further transfer, concealment, or dissipation of any such assets;

- Award any further relief the Court deems just and appropriate in equity.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. **Compensatory Damages**

Award Plaintiff compensatory damages in the amount of **$4 million per Defendant**, jointly and severally, for the violations of Plaintiff's constitutional rights, deprivation of due process, emotional distress, reputational harm, and prolonged denial of access to the courts.

B. **Punitive Damages**

Award Plaintiff **punitive damages in the amount of $6 million per Defendant**, in their individual capacities, to punish and deter willful misconduct, abuse of power, and reckless disregard for federally protected rights.

C. **Constructive Trust and Equitable Accounting**

Impose a **constructive trust** over any and all funds or financial gains obtained through unconstitutional or fraudulent conduct as alleged herein.

Order a full **accounting and tracing** of all such funds and direct restitution to Plaintiff as deemed appropriate.

D. **Declaratory and Injunctive Relief – Florida Supreme Court Justices**

Issue a **declaratory judgment** that the actions of the Florida Supreme Court Justices violated Plaintiff's rights under the **Supremacy Clause** and **Fourteenth Amendment**.

Enter an **injunction** enjoining the Justices in their **official capacities** from reframing or denying future constitutional petitions brought under the Florida Constitution's **All-Writs jurisdiction** without full and fair review.

E. **Injunctive Relief – Clerk of Court Tiffany Russell**

Enjoin **Clerk Tiffany Russell** in her **official capacity** from transmitting, preparing, or certifying default-related communications, filings, or orders in this matter unless specifically authorized by the Court and served on all parties. Prevent any future obstruction or delay in docketing filings made by Plaintiff in the Middle District of Florida.

F. **Pro Se Litigation Costs and Fees**

In recognition of Plaintiff's five years of continuous, self-directed litigation — spanning multiple state courts and now federal jurisdiction — Plaintiff respectfully requests the Court award $200,000 in litigation-related costs and pro se burden, including but not limited to filing fees, copying, postage, transportation, time diverted from work, and the compounded toll of defending constitutional rights without legal assistance. This amount reflects a reasonable flat value for five

60

years of sustained litigation against institutional misconduct, rooted in constitutional violations.

G. **Other and Further Relief**

Grant such other and further relief as this Court deems just and proper, including but not limited to orders preserving Plaintiff's access to equitable remedies, discovery, or post-judgment enforcement.

## Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## Verification Under Penalty of Perjury

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: 4/17/2025

Respectfully submitted,

/s/ Rayon Payne

_____

RAYON PAYNE, PRO SE
8815 Conroy Windermere Rd
Ste. #208
Orlando Florida 32835
Tel: 863-485-0550
Email: kekomardi@gmail.com

61